3-6-0-5-8-9 People of the State of Illinois, Appellee by Stephanie Raymond v. Dorell Taylor, Appellant Emily Koza. Ms. Koza, you may proceed. Thank you. Good morning, Your Honors, and may it please the Court. My name is Emily Koza, and I'm from the State Appellate Defender's Office, representing the defendant, Dorell Taylor, in this appeal. After a jury trial, Dorell was convicted of a number of various offenses, the most serious of which were one count of unlawful possession of a weapon by a felon and two counts of armed robbery. He was sentenced to 35 years in prison. I raised three issues in my brief. There are three issues raised in this appeal, but I'm going to be focusing the majority of my argument on the second and third issues, specifically the prosecutorial misconduct committed during closing argument and defense counsel's failure to redact the interrogation video. But I first want to make a couple of points about the first issue, the trial court's denial of the motion for directed verdict as to the armed robbery and unlawful possession charges. First, the record is clear here that the State proceeded under a shared intent accountability theory. The State may have called it the humming criminal design case, but its theory at trial was that Dorell and his co-defendant, Nicholas Woods, went to the alley with the shared intent to commit armed robbery. And because this was a shared intent case, the State was required to present evidence establishing that Dorell drove Woods to the alley knowing Woods was going to commit armed robbery. Without presenting such evidence, the State could not establish that Dorell intentionally aided Woods in his commission of that crime. You can't intend to aid in the commission of a crime that you don't know is going to happen. Well, can that, can you find intent after, do you have to have it before you get in the car? Or can that shared intent be developed or inferred later when there is, when you find out what's going to happen? It can be inferred later, but here there's no evidence that he had any knowledge before driving him to the alley, on the way to the alley, no evidence that he knew of the robberies before they happened. Well, is that essential? Yes, in a shared intent accountability case it is. Knowledge needs to be either directly or indirectly established before the criminal act? Yes, in a shared intent accountability case, yes. And again, the State presented no evidence, circumstantial or otherwise, to establish that Dorell knew Woods was going to commit any crime, let alone the specific crime of armed robbery. What about the gun? The State's argument is that this is a really big gun in a very small car and there was no way that the defendant could not have known that the gun was there. Well, the State presented no evidence in their case in chief that the gun was in the car prior to the armed robbery. So without this evidence, there's no reasonable person could find Dorell accountable for Woods' armed robberies. So the State presented no facts from which to draw any inferences? Correct, Your Honor. The State likewise failed to present facts establishing that Dorell intended to possess the shotgun that Woods used in the armed robberies. Without these facts, the State couldn't establish that Dorell had control over the shotgun, which was essential to proving that he either constructively or jointly possessed it. The State relied on the theory of joint possession based on its theory that Dorell and Woods were co-conspirators in the armed robberies. But without evidence that Dorell intended to facilitate the commission of the crime of the armed robberies, the State couldn't establish that Dorell intended to possess the shotgun that Woods used. So the unlawful possession charge is inextricably bound to the armed robbery charges. And the State's failure to establish an intent to facilitate the armed robberies means that the unlawful possession charge likewise cannot stand. And I would ask this Court to reverse Dorell's convictions on these charges outright. In the alternative, I would ask that Your Honors reverse these convictions and remand for a new trial. The prosecutors in this case committed misconduct during closing arguments by, among other things, misrepresenting and misstating facts, misstating the law, and shifting the State's burden. Further, defense counsel committed numerous errors, including failing to redact a portion of the interrogation video, which included several irrelevant and prejudicial statements from the officers questioning Dorell. Considered either independently or together, the prosecutors' misconduct and defense counsel's errors deprived Dorell of a fair trial. So I'm going to start off with the prosecutorial misconduct argument. The prosecutors here deliberately and intentionally misled the jurors in this case. At trial, Woods testified that he acted alone, that he and Dorell did not have a plan to commit armed robbery, and Dorell did not know that Woods was going to do so. During his rebuttal, Prosecutor Dickinson told the jury his, meaning Woods' case is over. He's pled guilty. He's got nothing to lose by trying to take responsibility. This statement implied to the jury that Woods fabricated his testimony after pleading guilty in order to help out a friend. But the prosecutors knew that Woods had given statements consistent with his testimony well before he ever pled guilty, when he still had something to lose. Woods told the police that Dorell was not involved in the robberies in the alley and did not know that they were going to happen. During his arraignment, Woods told the judge that he should not have a co-defendant for the armed robberies and that it was just him. Woods also wrote a letter to the court about two months after he was arrested stating that Dorell had no knowledge a crime was going to take place and had no knowledge that Woods had a gun until after Woods got back in the car after the robbery. By waiting until closing arguments to allege that Woods' testimony was fabricated due to his recent guilty plea, the prosecutors strategically kept the jury from hearing Woods' prior consistent statements and knowing that the defense wouldn't have any way to respond. A prosecutor's job isn't just to win. It's to win fairly, and the prosecutors here simply didn't play fair. They knew that Woods' testimony wasn't fabricated as a result of his recent guilty plea. They lied to the jurors and deprived Dorell of a fair trial. Now, in addition to deliberately misleading the jury, the prosecutors made over 20 objectionable statements during closing and rebuttal arguments, but rather than go through each one individually, I'd like to focus on the misstatements of law, in particular to the law of accountability. So during closing arguments, Prosecutor Pintoit told the jury, Accountability. Common sense, ladies and gentlemen. The classic example is the getaway driver in a bank robbery. No different in this case. The defendant and Mr. Woods were together before, during, and after the offense. Without the defendant, there is no crime. The defendant does what in this case? He provides the means of transportation. The car to get them to and from the crime scene, and also the car that helps transport the gun, ladies and gentlemen. He also told the jury, what about after? Well, criminals have to get away. Without getting away, there'd be no crime, because everyone would get caught. It's essential. Pintoit's misstatements of the law had the potential to convince the jury that an entirely unwitting person could be held accountable for the criminal conduct of another. But that's a misstatement. Driving a person to a destination does not itself make the driver legally accountable for the passenger's act. But that's precisely what, without the defendant, there'd be no crime conveyed to the jury. Further, by telling the jurors that getting away was essential to the crime, the prosecutor expanded the scope of the conduct, allowing Durrell to be found accountable for the armed robbery. The offense of armed robbery is complete once the perpetrator has accomplished the taking of property by force. Escape is not an element of armed robbery, and for accountability purposes, one can only be held accountable for conduct that constitutes an element of the offense. So even if Durrell became aware of the robberies after they were completed and drove Woods away knowing that he had completed the armed robberies, that's not enough for him to be held accountable for them. For armed robbery? For armed robbery. What could he be charged with? Potentially an accessory after the fact. However, there's no evidence, again, that he drove away knowing that Woods had committed armed robbery. And in fact, his testimony was that he didn't know what had happened until after they were already driving away. You said that the state had charged shared intent. They didn't charge it, but that's the theory that they proceeded under at trial. Okay, and is accountability a different theory? Shared intent is a – there are two ways that you can show intent for accountability purposes, and one is shared intent, and the other is a common criminal design. But that is used to hold people accountable for a crime where they planned one crime and their co-conspirator, co-defendant, whatever, commits another crime in furtherance of the first crime that was planned or committed. And there's no evidence here. The state never alleged that they were in that alley to commit another crime and the armed robberies were committed in furtherance of that crime. Their theory was always that they had the shared intent to commit armed robbery, that that was the plan that was – or that was the crime that was planned, and that was the crime that was carried out. So they're saying that it was planned but that there was not a common design? No. If they have a common design to commit armed robbery, they have the shared intent to commit armed robbery. Does that make sense? Mm-hmm. But they are two – the Illinois Supreme Court has made clear that these are two distinct accountability schemes. And with a shared intent case, which is what this was, there was never any allegation that the armed robberies were in – were committed in furtherance of some other planned or intended crime. They have to show actual knowledge. But we have students in the class. Oh, yes. That's right. So on their own, these misstatements of the law on accountability would have been – are prejudicial. But here, the prejudice is amplified. It means they mirrored misstatements made by Commander Passwater during the interrogation video, which counsel failed to redact. So in the interrogation video, the – Commander Passwater told Durrell, if I go do a bank robbery and I go in and do the robbery and the other detective drove the car, that's the exact same thing. Also told Durrell, well, if you rob somebody, if you're with the guy who does the robbery and you drive the getaway car, you rob somebody. It's the same thing, okay? Again, driving a person to a destination does not in itself make the driver legally accountable for the passenger's acts. Likewise, only a knowing getaway driver can be held accountable. That's the exact case in People v. Dennis. But that's the opposite of what this jury was told. And counsel's failure to redact the interrogation video of these statements and his failure to object when the state repeated these misstatements of law during closing argument was objectively unreasonable and allowed the jury to be misinformed as to how the law applied to the specific facts of this case. Well, we know that the law is the responsibility of the trial judge to instruct the jury accurately based on the facts presented in the case as to what accountability means or what it doesn't mean. Sure. And so we have closing arguments that are not objective to, you're saying, by defense counsel. The two are arguing a misstatement of that law, am I correct? Correct. Okay, so let's look. Did the trial judge make error by not correcting those instructions to the jury? It wasn't. So the jury instructions don't specifically apply the facts to the jury. That's what closing argument is for. Closing argument is to give the jury an idea of how the law is applied to the specific facts of this case. And is that something that would be corrected in jury instructions? No. And there was no objection made by defense counsel? No. Because a closing argument is not evidence. Right. And so it might be unusual. So then there was no curative instruction given, nothing by the judge saying that you're only to apply the law, which you've heard in closing arguments is not. Right. No, there was not a verbal curative instruction, no, because no objection was made. And, again, the jury heard these misstatements twice. I'm saying these are pretty egregious misstatements of the law. Yes, they are. You're saying the judge is only bound to offer curative instruction to the jury if it's objected to by counsel? The judge could have sua sponte, I guess, given a curative instruction, but it's not clear that he has the obligation to do so. It was counsel's job to object, and his failure to object was unreasonable. And, again, allowed the jury to be misinformed. And, again, these are not the only objectionable statements that were in the closing arguments. There are several, as outlined in my brief, too many to touch on here today, but it was objectively unreasonable. And it was also objectively unreasonable for defense counsel to allow the jury to hear about the last 25 minutes of the interrogation video. That should have been redacted. Durrell's story didn't change. He repeatedly denied he didn't rob anybody. It wasn't his gun in the car. That didn't change. In the last 20 minutes of the video, though, there were several prejudicial statements, including a statement by Commander Passwater that another robbery with the exact same M.O. had been committed earlier in the day on June 2nd, which was the day of the offense here. Counsel has two minutes. Thank you. The statement was enormously prejudicial as it implied that Durrell and Woods had been involved in a separate crime together earlier in the day, and there was a substantial likelihood that the jury interpreted this statement as being true, even though there's no evidence that such another robbery had even happened. So these errors, in addition to the ones raised in my brief, deprived Durrell of a fair trial. And on behalf of Durrell, I respectfully request that Your Honors reverse Durrell's convictions for armed robbery and unlawful possession outright or any alternative grand community trial. Thank you, Ms. Cozen. You'll have five minutes to go. Ms. Raymond, good morning. Good morning. May it please the Court, Your Honors, Counsel, my name is Stephanie Raymond. I'll be representing the people of the State of Illinois in this matter. In order to cover all the issues, I think it's important to cover Issue 1 first and sort of back up and discuss what the facts were in this case. Counsel repeatedly says there were no facts presented proving this or proving that. However, that's just not true. The testimony of the victims in this case set forth the facts that are necessary to determine the issues. By this I mean one of the victims, Ms. Victoria Turngreen, testified that she was talking on the phone with her brother in the afternoon, sitting on her porch when she noticed a silver compact car driving down the alleyway in between the houses. Houses, garages back up this way, there's an alleyway. The car was moving and there was a person walking in front of the car. She testified that she is absolutely sure that the car was moving. She testified that the person that she saw walking in front seemed shorter than her. And that the person was walking and she got off the phone with her brother and went and sort of around a, there's a fence and then a neighbor's garage and sort of peeked through and could see the person walking in front of the car, moving his head from side to side. And as she walked around the garages, and that time she saw the silver car was parked and there was no one inside the car. The other two victims that testified in this case were the Sims' and they testified that they were coming home from an appointment, pulled into their garage and the, Mr. Sims was helping his wife out of her car and at that point is when they heard a co-defendant come up and tell them to give me all your money. And he turned around and saw that the co-defendant had a shotgun pointed at Mrs. Sims' face. So at that point, Mrs. Sims told Mr. Sims to just give him your money. He puts what he has in his pocket on the back of his car, which is between $5 and $10 in singles. And the defendant takes it and says, the co-defendant rather, says, that's all you got? And Mr. Sims says, yeah. He points the gun at Mr. Sims and says, okay, give me your phone. Mr. Sims then throws his phone on the back of the car and he takes off. The next person who is victimized would be Victoria Terman and she testified that she, that the co-defendant came up to her and, well actually rather, let me back up just a little bit. She was standing there and saw co-defendant at the side of the car, on the driver's side. And they saw each other and then co-defendant says, what, what, you think you saw something? So he comes towards her, puts a bandana on his face, comes towards her and sort of like they tussle for her phone. She has her phone in her hand. So they're going back and forth with this phone. She doesn't want to give it up. So at that point she, you're still fighting for the phone. And she, he throws her on the ground. Could you focus on the evidence on the defendant? On the defendant? Yeah, sure. So the evidence on the defendant would be that before, one of the key factors I think is that the car is seen driving down the alleyway and a person is walking in front of it. That takes two people. That shows that the defendant is going there. That gives a reasonable inference that the defendant is going there with the co-defendant and they are looking for somebody to rob. What's the factual basis where they are looking for somebody to rob? Can you clarify? What's the factual basis for that? Well, in this case, the defendant's actions show his intent to aid this person in the commission of this crime. There are certain factors that can be looked at for that, which are presence at the scene without disapproval, flight from the scene. The third factor is failure to report the crime. And the fourth factor is sharing in the proceeds, which the people proved that the defendant was arrested with nine singles in his pocket and that the victim, of course, had singles taken from him. And then the other factors would be the close affiliation with the co-defendant after the crime and then the… So, in these… Looking at the singles that were in his pocket, did the state make any effort to prove whether or not he had money before he got there? The only evidence that he had money before he got there was obviously the statement that he had, but the state proved that there were singles found in his pocket. So, we're dealing with circumstantial evidence here, right? Correct. Okay. Now, what do you make of the… How do you respond to the argument of the opposing counsel that this was an accountability based on shared intent? That's what you think. So, because the… It seems to be kind of the linchpin of their argument. There was shared intent in this case, and the facts show that by the fact that he went there with the co-defendant. He was present at the scene. He did not disapprove of the crime, did not report the crime. He fled the scene, led police on a chase, which ended in a wreck. And that's the only way that he had contact with the police, is that they caught him. And it's not as if he was going to report this crime later. I mean, the facts of the case show the intent. And the victim's testimony corroborated that because they showed that, you know, the gun was used by the co-defendant, and it was used against the, you know, pointed at the Simpsons, and then it was not initially there when Ms. Victoria was confronted. So, you know, there's all the… The fact that the defendant claims he had no idea that any of this was going on is… Well, is it true or not true, under the facts of this case, that when he encountered with the lady, the second lady, Victoria, was first to struggle? Where there was no gun involved. There was no gun involved. Was there ever a gun involved in the bargain with Victoria? Yes, after the tussle. Okay. So where was the gun at the first encounter with Victoria? Right. Where was it? There's no facts as to where it was. No one ever discussed it with anyone. But then it showed up when he pointed a gun at her and told her to get on the ground, right? Correct. And took the phone. Correct. Okay. So the argument is that, I think, was it not the State's argument, the gun was deposited in the car with this defendant and then retrieved from the car to go and assault Victoria. Right. That's the reasonable inference that the State draws from that evidence. I'm just trying to get a handle on these presentation of facts. Correct. But the co-defendant testified that he had left it in the alley? Correct. He left it somewhere? No. He testified that he was going there to hide it in the alley and that defendant knew nothing of what co-defendant was doing. That was his testimony. He says that he, co-defendant testified that he stashed it in the car earlier that morning when he had taken the car on his own and then when the two were in the car together, it was still in the car and that he actually testified that when he was getting out of the car to go hide his gun in the alley, he opened the back door to get it. The reasonable inference would be that that's the back seat of the car and retrieved the gun. And actually, the co-defendant's testimony was that he was going to hide it and that's when he saw the Simms' where he thought they'd seen him trying to hide the gun. And then, according to the co-defendant's testimony, that's when the robberies transpired. So, to speak to the other issue. What about this, it was clear, the Oakland Council said, this shared intent has to be established before the act, the criminal act. Do you agree with that? No, it can be established before or during the commission of the offense. So, you know, a person is responsible for the criminal conduct of another in Illinois either when, either before or during the commission of, you know, the crime and with intent to plan or promote or facilitate the crime. He or she aids, abets, or attempts to aid in the commission of that crime. And it's the state's position that that's exactly what happened. So, facilitation with a crime could occur without prior knowledge of the crime by a co-defendant if that co-defendant facilitated by helping the person escape? Correct. Would be accountable for the criminal act committed by the co-defendant? Correct. Okay. Just to speak to the other two issues, the comments of which defendant complains speak to the credibility of the witnesses, which is proper. In stating the law to the jury, the prosecutor actually read directly from the jury instructions what the law was and then proceeded to apply that to the facts of this case. Now, the defendant's argument is, of course, that she did not apply, he or she, the prosecutor did not apply the facts properly. However, credibility is a proper issue for closing argument. And counsel said that a curative instruction was not given. It was given. The trial judge specifically gave the instruction that closing arguments are not evidence and they are just that, arguments. She alleges misconduct, but really she just, the defendant just doesn't agree with the argument. That does not mean that it's misconduct. It's the state's position that there was no misconduct in this case. The prosecutor was speaking to the credibility of the witnesses, which is proper, and all of the evidence that has been presented at the trial. Counsel also brings up this statement that was made by a co-defendant, that defendant, he should be the only one. Her argument is that, okay, then the state should have just accepted that and all proceedings would stop. That's not how the justice system works. They, you know, state's attorneys should investigate and decide who should be charged with what. And because they didn't take his co-defendant's statement, which was, by the way, just that he should not have a co-defendant, not that the defendant was completely innocent. So the fact that they didn't just take him at his word and charge only him is, you know, it's ludicrous. So just to speak, though, to the video, she next alleges that the video should have been redacted. The comments in the video by the police officer were those that spoke to defendants' ignorance, fears, and anxieties, which is proper. And the statements made by the police officer showed, were necessary in the video, to leave it in for the jury, showed the effect that those statements by the police officer had on the defendant. Meaning, when I say this, what was his reaction or his response? So they were necessary in this instance. The case that she uses, Amaya, it's distinguishable because in People v. Amaya, the prosecutor in that actually set forth theories of what the defendant in that case, what he knew about where the drugs were in the car. However, in this case, there was no theory set forth. The prosecutor, you know, discussed the fact that co-defendant had pled guilty already, which he did, and he actually testified too. There was no, you know, presenting, you know, trying to fool the jury or, you know, mislead them in any way. It was very upfront about what the evidence was and how that, you know, the prosecutor felt that it, you know, applied to the case and her argument about those reasonable inferences that could be made. Counselors, two minutes. Well, if there are no further questions, it's the people's position that the defendant was proved guilty of armed robbery and accountability theory beyond a reasonable doubt, and his conviction should be affirmed. Thank you, Ms. Raymond. Ms. Koza. Ms. Koza. First, I'd like to correct something. So opposing counsel said that Victoria Turngren, who was the second victim in this case, testified that there wasn't anyone in the car when she walked up. That is not true. There was no testimony about whether or not somebody else was in the car. I do not believe that she was ever asked that. So I want to jump to the whole idea of shared intent being formed during a crime. That is true. But facilitating by helping a co-defendant escape does not, accountability doesn't attach. So if Durell had realized that Woods had committed armed robbery, didn't do anything to help him complete that offense, and again, armed robbery is complete once the perpetrator has accomplished the taking of property by force. Once the phone was forcefully taken from Turngren for accountability purposes, the crime of armed robbery was complete. Durell facilitating his escape does not, accountability would not attach for the armed robberies if the intent was formed after the crime was complete. So again, escape is not an element of armed robbery. But the intent and the staying there and, you know, with one driving in front of, when the co-defendant's walking in front of the car and he's allegedly driving, isn't, I mean, by inference you say there has to be more than that to prove that he had knowledge of him, you know, casing, you know, the alleyway or? I don't think a person walking down an alley is, I don't think it's a reasonable inference at all to say that their intent, I don't think it's reasonable to infer at all that they were casing. I would grant you that it wouldn't be enough probable cause to stop them if a police officer came into that alley, but then you add that to the facts that then there is an armed robbery that occurs that the co-defendant is involved in, certainly physically involved in. So now that when you add those together, you say that the jury isn't allowed to draw that inference, you know, whether they decide to believe that inference or not is their burden. Would you think that isn't enough of an inference that would allow them to do that? To allow them to infer that a crime, that he knew that a crime was going to be committed? No. No. And again. Let me get the facts here. Sure. The opposing counsel says that Victoria testifies that she sees a car going slowly. She said it was, I don't think she said it was going slowly. It was a moderate pace, I believe. Well, we can quibble. A car is going down the alley and somebody is walking in front of the car. Sure. Okay. Now, the rest of the facts are that the person walking from Woods presumably is walking from the car. Is he carrying a gun? There's no evidence of that. Okay. But the Sims were accosted by Woods and had a gun. Sure. Okay. So. But without any evidence as to where the gun was prior to the armed robberies being committed, the state presented no evidence as to where the gun was prior to them being committed. Zero evidence. But Woods testified he was going to try to hide a gun and that he put the gun in the car. Right. That was Woods' testimony in the defense's case in chief. That is not considered for the purposes of a directed verdict. There was no testimony in the state's case in chief as to where the gun was. So we're going just to your failure to get a directed verdict right now. Correct. Okay. And, again, I just want to reiterate again. So even if Durell, first of all, based on the first armed robbery, that was committed in the garage. There's no evidence as to Durell being around Mr. and Mrs. Sims did not identify him as being in the area. That was committed solely by Woods. So there's no evidence that Durell knew about that. Before it happened, while it was happening, no evidence of that. Counsel, just one minute. Thank you. But even if it could be inferred that he realized or suspected that Woods was committing an armed robbery against Turngrin, neither his awareness of this nor his failure to intervene would render him accountable. There would have to be something more. And, again, the armed robbery against Turngrin was complete before Woods got back to the car and driving him away from the scene would not be enough to have accountability attached for that crime. So with that, if Your Honors don't have any more questions. I have a question. Sure. With regard to inferences, you have said, or maybe it was Ms. Rankin that said that this was a circumstantial case. In terms of circumstantial evidence, what kind of facts are needed? Do there have to be facts, or can you just infer from circumstances without any information about what's informing your inference? There has to be a reasonable factual basis for the inference, Your Honor. And here, there's not really anything to infer that he knew that Woods was going to commit any crime, let alone an armed robbery. I looked at the pictures that were included in the record because the state seemed to be suggesting that there was no way that the gun could have been in the car. And Mr. Taylor was not aware of its presence. Sure. It was a small car. And one of the pictures shows how close, how much the seats, the front seats were pushed back. Sure. And they were touching the back seat, the front of the back seat. So it's possible if the floor is level. Was there any evidence about whether there was a hump in the floor? There's no evidence of that, no. Okay. If the floor were level, it's conceivable that the gun could be flat along the floor. Correct. Was there any evidence presented with regard to whether there was anything in the car that could have covered up that small space that was the width of the console? Not in the state's case in chief, but Woods testified that he had clothes and the gun, that he had gone earlier in the morning, he had taken Darrell's car, gone to get some of his clothes, and that is when he grabbed the gun and put it in the car. So it's conceivable that the gun could have been covered by his clothes. Okay. So, one, there's been a conviction. Collins is our standard for reviewing. And under Collins, we take the evidence in the light most favorable to the state. What evidence do we take? Do we take the state's inferences without a factual basis? Do we have to believe that, too? No, the state's only entitled to reasonable inferences. From facts. From facts, correct. You're saying from facts. You focused only on the record verdict. Correct. I mean, that's it. You're just saying you stood up there and said this case can't go any further, Your Honor, because there is no evidence on the required elements of the crime for my client to be charged with armed robbery. No, for him to... For the case to go on. Well, yeah, but what was the charge? You were charged with armed robbery. Thank you. And also what else? Unlawful possession of a weapon by a felon. And so against both of those charges, you said, Look at that case. It can't go forward because those elements haven't been established. Right. And the elements are insufficient for a reasonable inference. Right. Thank you, Your Honor. I'd like to thank counsel, both counsel, for your argument here today. The matter, the case will be taken under advisement, and we will issue a written decision to you as soon as possible. From the past what we've done...